COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert EMLER, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 3, 2006.
Filed July 21, 2006.

---

Gary J. Graminski, Canonsburg, for appellant.

Theresa F. Dukovich, Asst. Dist. Atty., Beaver, for Com., appellee.

BEFORE: TODD, McCAFFERY, and JOHNSON, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Robert Emler, appeals from the judgment of sentence entered in the Court of Common Pleas of Beaver County, following Appellant's conviction of one count of simple assault,[1] two counts of recklessly endangering another person,[2] and one count of harassment.[3] Specifically, Appellant asks us to determine whether there was sufficient evidence to support his convictions, and whether the trial court erred by rejecting his assertions that he acted in self-defense. After careful review, we affirm.

¶ 2 The trial court found the following facts from evidence it determined was credible during a bench trial. On November 22, 2003, Gary Lasota and William Marshall were turkey hunting in a wooded area near a right-of-way used by a power company for high-tension power lines. The two hunters had parked on property owned by Fred Lalama, who cautioned them against hunting on posted property next to the power lines. At approximately 10:30 a.m., Lasota shot a turkey. As he was placing a game commission tag on the turkey, he observed a white Chevrolet Blazer driven by Appellant approaching him at a high rate of speed. The two hunters attempted to leave the area, but Appellant overtook them in his vehicle and continued to chase the hunters on foot.

¶ 3 A confrontation then ensued. Appellant told the hunters that they could not hunt his animals or "his turkey." (Trial Court Opinion, dated July 13, 2005, at 2).

Lasota responded that the turkey was his because he had shot it. Appellant then demanded that Lasota surrender his shotgun to Appellant. As Lasota attempted to pick up the shotgun, which contained one live shell, Appellant grabbed him from behind and "chok[ed him] vigorously" in a manner described by Lasota as a "death grip." (*Id.*). As Appellant choked Lasota and the two men struggled for control over the shotgun, the barrel of the shotgun swung in the direction of Marshall, who was observing the struggle from a point within the immediate vicinity of the struggle. Marshall was quite fearful that he would be shot. Appellant ultimately gained control over the shotgun,[4] released his grip on Lasota, and took the shotgun to his vehicle. Appellant and the hunters respectively reported the incident to the police. Appellant told the police that he had been shot in the arm prior to the encounter, but he refused to seek or permit medical treatment.

¶ 4 The trial court further found that (1) Douglas C. Carney, a Wildlife Conservation Officer with the Pennsylvania Game Commission, had been asked by the Hopewell Police Department to investigate the incident; (2) at the time of Officer Carney's investigation, Appellant exhibited scratches on the arm where he alleged that he had been shot, but did not exhibit a gunshot wound; (3) Appellant failed to fill out a complaint alleging that he had been shot by a hunter, although he had been given the paperwork for this purpose by Game Commission personnel; (4) both hunters were properly licensed at the time the turkey was shot; (5) Lasota shot the turkey while he and Marshall were located in the power company right-of-way; (6)

1. 18 Pa.C.S.A. § 2701(a)(1).

2. 18 Pa.C.S.A. § 2705.

3. 18 Pa.C.S.A. § 2709(a)(1).

4. The evidence showed that Appellant weighed approximately 100 pounds more than Lasota.

the turkey died on property owned by a Mr. Gray adjacent to the right-of-way; and (7) the hunters did not violate any game laws. (*Id.* at 2–3).

¶ 5 At trial, Appellant testified to a version of events different from that ultimately found by the trial court. Appellant's version of events included his assertion that the hunters were upon his property when Lasota shot the turkey. The trial court, however, rejected Appellant's testimony as not credible, except for Appellant's admission that he chased after the hunters by vehicle and foot. (*Id.* at 3). In rejecting Appellant's testimony, the trial court specifically noted that Appellant's testimony was contrary to the physical evidence uncovered by Officer Carney. Such evidence included the location of feathers indicating the spots where the turkey had been shot and later died.

¶ 6 Following the submission of the evidence, the trial court found Appellant guilty of simple assault against Lasota; recklessly endangering Lasota; recklessly endangering Marshall, based upon the loaded shotgun coming to point in Marshall's direction during the struggle between Appellant and Lasota; and harassment. Appellant thereafter filed a timely appeal in which he presents the following four issues for our review:

1. Whether the trial court erred in finding the Appellant guilty after the non-jury trial in this matter of Simple Assault, Recklessly Endangering Another Person (2 counts) and Harassment when the Commonwealth failed to prove each and every element of those offenses beyond a reasonable doubt.

2. Whether the trial court erred in finding the Appellant guilty after the non-jury trial in this matter of Recklessly Endangering Another Person[ ] concerning victim William

Marshall when the evidence presented by the Commonwealth failed to prove that the Appellant engaged in any conduct that endangered victim William Marshall.

3. Whether the trial court erred in finding the Appellant guilty after the non-jury trial in this matter and not finding that the Appellant's actions amounted to the use of force in self-protection under 18 Pa.C.S.A. § 505(a).

4. Whether the trial court erred in finding the Appellant guilty after the non-jury trial in this matter and not finding that the Appellant's actions amounted to the use of force for the protection of property under 18 Pa. C.S.A. § 507(a)(1).

(Appellant's Brief at 7).

■■■ ¶ 7 Our review of Appellant's arguments is informed by the following principles:

Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence. For purposes of our review under these principles, we must

review the entire record and consider all of the evidence introduced.

*Commonwealth v. Love,* 896 A.2d 1276, 1283 (Pa.Super.2006) (quotations and citations omitted).

¶ 8 Appellant's arguments wholly ignore our standard of review, as they are not based upon the evidence, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. Instead, they focus upon evidence *viewed in a light most favorable to himself,* including evidence rejected by the trial court as not credible. For example, Appellant relies upon *his* testimony that the hunters and the dispatched turkey were on his property, although the trial court accepted as credible Officer Carney's testimony that the turkey was not shot and did not die on Appellant's property. Appellant also argues that, contrary to the evidence that he had placed Lasota in a "death grip," evidence that the trial court accepted as true, the struggle between Appellant and Lasota amounted only to "some incidental physical contact" without any resulting bodily injury to Lasota. (Appellant's Brief at 12). As a reviewing court, we may not re-weigh the evidence, substitute our judgment for that of the fact-finder, or usurp the fact-finder's prerogative to make credibility determinations and accept all, part, or none of the evidence. *Love, supra.* We will, however, examine whether the evidence is sufficient to support Appellant's convictions in light of our standard of review, and not in light of Appellant's argument that isolated (or indeed discredited) evidence supports a contrary result. *Id.*

■ ¶ 9 Section 2701(a) of the Crimes Code provides that a person is guilty of assault if that person "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa. C.S.A. § 2701(a)(1). With respect to the elements of Section 2701(a)(1), we have observed:

[T]he Commonwealth's burden [to prove] simple assault is to show [that the defendant] attempt[ed] to cause, or intentionally, knowingly or recklessly cause[d] bodily injury to another. "Bodily injury" is defined as impairment of [a] physical condition or substantial pain. The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. A person commits criminal attempt when he [or she] intentionally does any act which constitutes a substantial step toward commission of a specific crime. The intent for attempt may be shown by circumstances which reasonably suggest that a defendant intended to cause injury.

*Commonwealth v. Repko,* 817 A.2d 549, 556 (Pa.Super.2003), *overruled in part on other grounds, Commonwealth v. Matthews,* 870 A.2d 924 (Pa.Super.2005) (quotation and citations omitted). In *Repko,* we determined that the evidence was sufficient to support a conviction under Section 2701(a)(1) where the evidence established that, following an argument, the defendant confined his fiancée in a headlock while carrying a shotgun in his other hand, and where the fiancée struggled to free herself from the headlock. *Id.* at 557.

¶ 10 In the case *sub judice,* the credible evidence established that Appellant chased down Lasota and Marshall and initiated a confrontation based on Appellant's perception that the hunters had trespassed and shot a turkey located at the time upon his property. When Lasota disputed that he and his friend had trespassed or that the turkey "belonged" to Appellant, Appellant demanded that Lasota surrender Lasota's loaded shotgun. When Lasota placed his

hand on the weapon, Appellant grabbed him from behind and began to choke him "vigorously," with such force that Lasota believed that he was in a "death grip." Appellant struggled with Lasota for control of the loaded shotgun, and he admitted that during the struggle he had positioned his 275–280–pound frame on top of Lasota's 175–pound frame.

¶ 11 The record also reveals, when viewed in a light most favorable to the Commonwealth as verdict-winner, that Lasota, during the struggle, asked Marshall to contact the police. Police Officer Peter Cipolla testified that when he went to the scene to investigate, he encountered Lasota and another individual (presumably Marshall), at which point Appellant drove up on the scene. After Lasota told Officer Cipolla his version of the events, Appellant stated to Lasota: "I should have killed you, you son-of-a-bitch." (Notes of Testimony ("N.T."), 3/11/05, at 69). Finally, the evidence reflected that as a result of the struggle with Appellant, Lasota's neck, shoulders, and upper back were sore for several weeks. Lasota sought medical treatment for his pain, and was told by his doctor to treat his pain with Tylenol.

¶ 12 Based upon the above factual scenario, there is no doubt that the trial court correctly concluded that the Commonwealth had proven every element required to secure a conviction under Section 2701(a)(1). By vigorously and forcefully choking a smaller man and using his much heavier body to pin the victim to the ground, Appellant clearly took substantial steps toward inflicting bodily injury upon Lasota. Further, Lasota experienced upper body pain for several weeks after the incident. Under *Repko, supra,* we determine that the trial court did not err by finding Appellant guilty of simple assault.

 ¶ 13 Section 2705 of the Crimes Code defines the crime of recklessly endangering another person as "conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. We have held that a person is guilty of this crime when it is shown that the person (1) possessed "a *mens rea* recklessness," (2) committed a wrongful deed or guilty act ("*actus reus*"), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person. *Commonwealth v. Reynolds,* 835 A.2d 720, 727 (Pa.Super.2003) (citation omitted). The element of "*mens rea* recklessness" has been defined as "a conscious disregard of a known risk of death or great bodily harm to another person." *Id.* (citation omitted). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301; *Commonwealth v. Stevenson,* 894 A.2d 759, 774 (Pa.Super.2006). We have further held that Section 2705 "was directed against reckless conduct entailing a serious risk to life or limb *out of proportion to any utility the conduct might have*" had. *Reynolds, supra* at 727 (citation omitted; emphasis supplied). Finally, the perpetrator must create an actual condition of danger, not merely an apprehension of danger. *Id.* at 727–28. In *Reynolds,* we determined that circumstances leading to a struggle for a gun, whether the gun was loaded or not, created conditions for actual danger in that someone else with a gun might retaliate. *Id.* at 729.

¶ 14 Here, Appellant initiated a struggle for control of a loaded shotgun in the presence of the victim's friend, who was armed with hunting weapons. During this struggle, Appellant choked the victim so forcefully that the victim believed he was in a "death grip." Also during the struggle, the barrel of the loaded shotgun swung in the direction of Marshall, who

consequently feared for his life. With *mens rea* recklessness, Appellant initiated wrongful, violent conduct that created an actual danger of death or serious bodily injury to both Lasota and Marshall. We conclude, therefore, that the trial court did not err by finding Appellant guilty of two counts of recklessly endangering another person.

■ ¶ 15 Section 2709(a)(1) of the Crimes Code provides that a person is guilty of the crime of harassment if that person, "with intent to harass, annoy or alarm another ... strikes, shoves, kicks or otherwise subjects the other person to physical contact or threatens to do the same." 18 Pa.C.S.A. § 2709(a)(1). We have held that a fact-finder could reasonably conclude that the throwing of another person to the ground satisfies the elements necessary for a conviction under Section 2709(a)(1) in that there was physical contact with intent to alarm. *Commonwealth v. Kirwan*, 847 A.2d 61, 64 (Pa.Super.2004). In the case *sub judice*, Appellant grabbed Lasota from behind in a choking hold, pinned him to the ground with his heavier body, and struggled with him for control of a loaded shotgun. There can be no doubt that these facts support a conviction under Section 2709(a)(1) in that there was indeed physical contact and, under the circumstances, a reasonable inference of intent to alarm and distress. Again we conclude that the trial court therefore did not err by convicting Appellant of harassment.

■ ¶ 16 Appellant's arguments that the Commonwealth failed to prove the elements necessary for his convictions of simple assault, recklessly endangering another person, and harassment are all largely based on his arguments that he was simply acting in self-defense of both his person and his property. With respect to the issue of self-defense of the person, we have held:

The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. *See* 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact[-]finder.

*Reynolds, supra,* at 731 (citation omitted).

¶ 17 Here, Appellant testified that he had been shot in the arm with buckshot prior to the time he drove to the area where Lasota and Marshall were hunting. Appellant further testified that when Lasota placed his hand on the shotgun following Appellant's demand that he surrender it, Appellant "figured I am going to get shot again ... so I went for the gun." (N.T. at 106). This testimony did suffice to raise a self-defense argument at trial, necessitating that the Commonwealth disprove this defense beyond a reasonable doubt.

¶ 18 The evidence produced by the Commonwealth overwhelmingly supports the trial court's conclusion that the Commonwealth had met its burden. First, as the trial court observed, Appellant was the initial aggressor in that he chased the hunters down by vehicle and then by foot. (Trial Court Opinion at 4). Second, the evidence found credible by the trial court established that Appellant had attacked Lasota without a previous attack or threat to Appellant by Lasota. (*Id.*) Third, Appellant admitted at trial that neither Laso-

ta nor Marshall threatened Appellant with physical harm in any way. (N.T. at 125). Finally, there is no evidence in the record that Appellant was intentionally shot by Lasota or Marshall. Indeed, the record supports the trial court's apparent finding that Appellant had not been shot at all. (*See* Trial Court Opinion at 2–3). Even had Appellant been shot, there is no basis from anything in the record that would justify Appellant's reaching any other reasonable conclusion than that the shooting had been an accident, likely the result of buckshot straying from its intended target. Therefore, Appellant had absolutely no reason to conclude that he was in danger of being "shot again." For these reasons, we determine that the trial court did not err by rejecting Appellant's claims of self-defense of person.

¶ 19 Appellant also argues that he was legitimately defending his property from the hunters. Section 507 of the Crimes Code provides in relevant part:

(a) Use of force justifiable for protection of property.—The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:

(1) to prevent or terminate an unlawful entry or other trespass upon land or a trespass against or the unlawful carrying away of tangible movable property, if such land or movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts....

* * * *

(c) Limitations on justifiable use of force.—

(1) The use of force is justifiable under this section only if the actor first requests the person against whom such force is used to desist from his interference with the property, unless the actor believes that:

(i) such request would be useless;

(ii) it would be dangerous to himself or another person to make the request; or

(iii) substantial harm will be done to the physical condition of the property which is sought to be protected before the request can effectively be made.

18 Pa.C.S.A. § 507.

¶ 20 In the case *sub judice*, there is not a scintilla of evidence that it was *"immediately necessary "* to use force to eject the hunters from Appellant's land, if Appellant believed that the hunters were on his land. There is no evidence that Appellant indicated to the hunters the purported boundaries of his property or that he ordered them to immediately leave his land. There is no evidence that any request by Appellant to quit his land would have been useless or dangerous to his person. There is no evidence that the hunters had taken any property belonging to Appellant. Therefore, we determine that Appellant's defense-of-property argument is wholly and utterly without merit.

¶ 21 We note further that although the Commonwealth assiduously protects the rights of property owners, the rights of hunters engaged in useful purpose and lawful recreation under the Game and Wildlife Code[5] are also entitled to the full protection of our laws. Even had Lasota and Marshall inadvertently strayed upon Appellant's land in their lawful pursuit of the turkey (and it is not uncommon for hunters to cross boundaries by accident where areas are heavily wooded or post-

5. 34 Pa.C.S.A. §§ 101–2965.

ings are unclear), it is never permissible that such action, on its own, should be met with assault or harassment.

¶ 22 For the above reasons, we hold that the trial court did not err by convicting Appellant of the crimes of simple assault, recklessly endangering another person, and harassment, or by rejecting Appellant's assertions that he acted in defense of his person and property.

¶ 23 Judgment of sentence affirmed.

¶ 24 TODD, J. concurs in the result.