J-S75036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYREE DOCKERY, | |
| Appellant | No. 1423 EDA 2014 |

Appeal from the Judgment of Sentence entered April 11, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0004934-2012

BEFORE: ALLEN, LAZARUS, and MUNDY, JJ.

MEMORANDUM BY ALLEN, J.: **FILED DECEMBER 04, 2014**

Tyree Dockery ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of third degree murder, firearms not to be carried without a license, and possession of an instrument of crime.[1] We affirm.

The trial court summarized the pertinent facts and procedural history as follows:

> On December 12, 2005, at approximately 11:30 p.m., [Appellant] Tyree Dockery, and Denzel Deverteuil were standing at a bus stop with friends on "G" Street in Philadelphia. Juan Hayes parked his blue Chevy Caprice station wagon and approached Deverteuil demanding a fistfight over the late repayment of a loan. Both agreed it would be a fair fistfight without weapons. Hayes opened his jacket to confirm his lack of a weapon. Hayes and Deverteuil fought for five minutes before

_____

[1] 18 Pa.C.S.A. §§ 2502, 6106 and 907.

Deverteuil refused to fight any longer and walked off. Hayes told Deverteuil the fight was not over and that he would be back.

Hayes went to pick up his brother-in-law, the decedent, Cleo Flynn, explaining that he needed Flynn to serve as back up. Hayes and Flynn, without weapons, returned to the 4600 block of "G" Street. As Hayes was parking, Deverteuil walked away down the block. Deverteuil saw a man resembling [Appellant] cross his path, running in the direction of Hayes and Flynn.

At 11:52 p.m., immediately after Hayes and Flynn exited their vehicle, [Appellant] appeared from behind a car and fired three to four rapid shots at Hayes and Flynn. Both Hayes and Flynn fell to the ground. Hayes remained on the ground until the firing stopped.

When Hayes became aware that Flynn was not moving, he put Flynn in the passenger seat of his station wagon and drove towards the hospital. While en route to the hospital, Hayes flagged down a police car on Hunting Park Avenue. Fire rescue transported Flynn to Temple University Hospital where he was pronounced dead from a single gunshot wound to the head at 12:31 a.m. The Medical Examiner recovered a nine millimeter bullet from Flynn's body.

On December 13, 2005, at 12:50 a.m., Crime Scene Unit Technician Karen Auerweck arrived at the scene of the murder. Auerweck recovered three fired cartridge casings (FCCs) and one bullet fragment from the scene. That same day, Crime Scene Officer Fidler recovered bloody clothing on the front passenger seat of Hayes' vehicle and a bullet that was lodged in the vehicle's door.

According to Police Officer Norman DeFields, an expert in firearms identification, the three FCCs recovered from the scene were all nine millimeter Lugers manufactured by Federal. These FCCs were consistent with being fired from the same firearm as the shape of the firing pin that struck the primer of each FCC had the same rectangular shape. [sic] The bullets recovered were all nine millimeter. The bullets were consistent with being fired from a nine millimeter semiautomatic handgun.

During the summer of 2011, [Appellant] and William Razor visited Sharlita Razor in North Carolina. [Appellant] confessed to

- 2 -

committing a murder in Philadelphia. [Appellant] admitted he had witnessed a fistfight between his friend and another male. He claimed that the male had pointed a gun at his friend, but did not use it. [Appellant] explained that after seeing this, he went into his brother, Tellis Dockery's house, to arm himself. When he came back outside the fight had dispersed.

Upon hearing a car approach, [Appellant] fired rapidly three or four times towards the two males who exited the vehicle. [Appellant] admitted that he did not know if the two males who exited the vehicle were the same men who had been involved in the earlier fistfight. After the shooting, [Appellant] retreated to his brother's house and told [his] brother and his brother's wife what had happened. [Appellant's] brother called their sister and they both arranged for [Appellant] to take a bus to Fayetteville, North Carolina the next morning.

In the summer of 2011, Detective William Kelhower was assigned to the case after Dorothy Dixon, [Appellant's] aunt and former Philadelphia Police Officer, called the Philadelphia Police Department and informed them she had learned from her daughter, Sharlita Razor, that [Appellant] had confessed to a shooting in Philadelphia during his recent stay with Sharlita Razor and William Razor. Both Sharlita and William Razor gave statements to police describing [Appellant's] confession to the murder.

On December 12, 2011, police re-interviewed Deverteuil. In his December 20, 2005 statement to homicide detectives, Deverteuil identified the shooter by the nickname "Buddha," describing him as a dark skinned male of average build, about six feet tall, with dreadlocks. In 2011, Deverteuil identified [Appellant] from a police photo array as the man who shot Flynn.

On January 12, 2012, Detective Kelhower conducted a second interview of Hayes. In his December 12, 2005 statement to police, Hayes described the shooter as a dark skinned male, about twenty to twenty two years old, around six feet tall, weighing about 185 pounds, with a wide nose, some facial hair, and dreadlocked hair. During the second interview in 2012, Hayes identified [Appellant] as the shooter from a police photo array.

- 3 -

Both Hayes and Deverteuil identified [Appellant] as the shooter at trial.

On February 14, 2012, the United States Marshal Service arrested [Appellant] in North Carolina. On March 1, 2012, after returning to Philadelphia, [Appellant] told Detective Kelhower that his nickname was "Buddha."

Trial Court Opinion, 6/18/14, at 2-5 (citations to notes of testimony omitted).

Appellant was charged with the aforementioned crimes, and a jury trial commenced on January 7, 2014. On January 13, 2014, the jury returned its guilty verdicts. Following a hearing on April 11, 2014, the trial court sentenced Appellant to twenty to forty years of imprisonment for third degree murder, and a consecutive two and a half to five years for carrying a firearm without a license, with no further penalty for possessing an instrument of crime. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. WAS THE EVIDENCE INSUFFICIENT TO SUPPORT THE CHARGE OF THIRD DEGREE MURDER BECAUSE THE COMMONWEALTH FAILED TO DISPROVE BEYOND A REASONABLE DOUBT THAT APPELLANT KILLED THE VICTIM IN SELF-DEFENSE?

2. DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION BY REFUSING TO CHARGE THE JURY ON THE DEFENSE OF SELF-DEFENSE?

Appellant's Brief at 3.

In his first issue, Appellant concedes that the evidence was sufficient to support a verdict of voluntary manslaughter, but not the verdict of third-degree murder, because the Commonwealth failed to disprove Appellant's justification of imperfect self-defense. Appellant's Brief at 15-21.

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Emler*, 903 A.2d 1273, 1276–77 (Pa. Super. 2006).

"Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty." *Commonwealth v. Truong*, 36 A.3d 592, 597 (Pa. Super. 2012) (citations omitted); 18 Pa.C.S.A. § 2502. "Malice may be inferred from the use of a deadly weapon on a vital part of

the victim's body. Further, malice may be inferred after considering the totality of the circumstances." ***Truong***, 36 A.3d at 597 (citations omitted).

Here, the trial court explained:

> [T]wo eyewitnesses, Hayes and Deverteuil, identified [Appellant] as the shooter. Both eyewitnesses gave a physical description of the shooter in 2005 and later identified [Appellant] as the shooter from a police photo array, Deverteuil in 2011 and Hayes in 2012. Hayes and Deverteuil both confirmed those identifications at trial. The testimony of [Appellant's] cousins corroborated Hayes' and Deverteuil's identifications as [Appellant] confessed to a shooting factually identical to Flynn's murder. This evidence is sufficient to establish the identity of [Appellant] as the murderer.

> The evidence also established that [Appellant] acted with malice. [Appellant] armed himself with a firearm and waited for Hayes to return. Although [Appellant] confessed he did not know who was emerging from Hayes' vehicle, he immediately began shooting at the two individuals. [Appellant] fired three to four shots in rapid succession, shooting Flynn in the head. [Appellant] shot Flynn in a vital part of the body; thus malice is presumed.

Trial Court Opinion, 6/18/14, at 6-7.

We agree with the trial court that this evidence, if believed by the jury, was sufficient to support Appellant's third-degree murder conviction. Appellant argues, however, that the evidence supported only a voluntary manslaughter conviction because the Commonwealth failed to disprove his justification of imperfect self-defense. The law provides for a conviction of voluntary manslaughter where a person "knowingly and intentionally kills an individual" under the unreasonable belief that the killing was justified. ***Commonwealth v. Rivera***, 983 A.2d 1211, 1218 (Pa. 2009) (citing 18

Pa.C.S.A. § 2503(a) and (b)). Such "unreasonable belief of self-defense voluntary manslaughter," or "imperfect self-defense", results in a conviction for the offense of voluntary manslaughter if the jury believes that the defendant held "an unreasonable rather than a reasonable belief that deadly force was required to save [his or her] life," and "all other principles of justification under 18 Pa.C.S. § 505 … have been met." ***Commonwealth v. Sanchez***, 82 A.3d 943, 980 (Pa. 2013) (citations and internal quotations omitted).

> The evidentiary elements necessary to prevail on a justification defense are that the defendant (a) reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) was free from fault in provoking the difficulty which culminated in the slaying; and (c) did not violate any duty to retreat. [See]18 Pa.C.S. § 505.

***Sanchez***, 82 A.3d at 980 (citations omitted).

As the trial court noted, Hayes credibly testified that neither he nor Flynn "had a weapon on their person at anytime during the night of the incident." Trial Court Opinion, 6/18/14, at 8. Moreover, Appellant was not involved in the initial fight between Hayes and Deverteuil, and the jury could have reasonably inferred that there was no danger to Appellant as he was not involved in the confrontation. *Id*. Additionally, Appellant admitted that before he began shooting, he did not know if the two men exiting the vehicle had been involved in the initial confrontation, and that he did not know their identity at that time. *Id*. Moreover, as the trial court observed:

[Appellant] had a sufficient cooling off period, and time to retreat as there were about ten minutes between when Hayes left the first fight and when he returned to "G" Street. It is clear that [Appellant] violated his duty to retreat. Even if [Appellant] possibly believed he was in danger after the first fight, a fight with which he was not involved, [Appellant] left the scene and was in complete safety at his brother's house. Instead of remaining in the house, [Appellant] armed himself with a firearm and returned to the scene. Even upon seeing the men exit the car on "G" Street, [Appellant] could have decided to re-enter his brother's home. Instead, [Appellant] chose to shoot at strangers who were getting out of their parked car on a residential street.

[Appellant] could not have reasonably believed he was ever in imminent danger of serious bodily harm from Hayes or Flynn. [Appellant] had no right to use deadly force to repel the non-existent threat of danger.

Trial Court Opinion, 6/18/14, at 8-9 (citations to notes of testimony omitted).

We find no error in the trial court's determination. Although Appellant presented a claim of imperfect self-defense at trial, including testimony that he believed that Hayes and Flynn intended to confront him and not Deverteuil on the date of the incident, and that he thought he was in danger, the jury evaluated the credibility of the witnesses, and rejected Appellant's justification defense. Conversely, the jury credited the Commonwealth's evidence, which supported a finding that Appellant did not act in self-defense, imperfect or otherwise. We may not reweigh the evidence or disturb the jury's credibility findings with regard to Appellant's imperfect self-defense claim.

Appellant next argues that the trial court erred in declining to issue a self-defense instruction to the jury. Appellant's Brief at 21-29. We have explained:

> Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge. Such a claim may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration.
>
> Thus, as provided by statute and as interpreted through our case law, to establish the defense of self-defense it must be shown that[:] a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself therefrom; and c) the slayer did not violate any duty to retreat or to avoid the danger.
>
> If there is any evidence from whatever source that will support these three elements then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court.

*Commonwealth v. Mayfield*, 585 A.2d 1069, 1070–71 (Pa. Super. 1991) (*en banc*) (citations omitted).

Upon review, we find no error in the trial court's determination that Appellant failed to present a valid claim of self-defense as a matter of law. Appellant failed to present evidence that he was free from fault, that he reasonably believed that he was in imminent danger of death or great bodily

harm and that there was a necessity to use such force to save himself, and that he did not violate any duty to retreat or to avoid the danger. Accordingly, the trial court's refusal to issue a self-defense instruction did not constitute an abuse of discretion. For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/4/2014</u>