J-S61032-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,  :   IN THE SUPERIOR COURT OF
:                 PENNSYLVANIA
Appellee  :
:
v.  :
:
T.M.F., SR.,  :
:
Appellant  :    No.  638 MDA 2015

Appeal from the Judgment of Sentence Entered March 11, 2015,
in the Court of Common Pleas of Schuylkill County,
Criminal Division, at No.: CP-54-CR-0001106-2014

BEFORE:    PANELLA, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED NOVEMBER 12, 2015**

T.M.F., Sr., (Appellant) appeals from the judgment of sentence entered following his convictions for recklessly endangering another person (REAP) and the summary offense of harassment.  In addition, Appellant's counsel has filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm the judgment of sentence and grant counsel's petition to withdraw.

On May 1, 2014, Appellant was involved in a physical altercation with his wife (Grandmother); their son (Father); their grandchild and Father's child, A.F.; and A.F.'s mother (Mother).  The altercation related to the custody of A.F., who was approximately 15 months old at the time, and ultimately resulted in injuries to A.F.  On February 5, 2015, Appellant was

*Retired Senior Judge assigned to the Superior Court.

convicted by a jury of REAP as to A.F. and by the trial court sitting as fact finder of harassment as to Mother. Appellant was sentenced to serve 7 to 23 months of incarceration for the REAP conviction and to pay a $100 fine for the harassment conviction. Appellant timely filed a notice of appeal. The trial court ordered Appellant to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and one was filed. Appellant's counsel then filed with this Court a petition to withdraw his representation of Appellant and an **Anders** brief.

The following principles guide our review of this matter.

Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof….

**Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

*Commonwealth v. Wrecks*, 931 A.2d 717, 720-21 (Pa. Super. 2007) (citations omitted).

Our Supreme Court has clarified portions of the *Anders* procedure:

Accordingly, we hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Based upon our examination of counsel's petition to withdraw and *Anders* brief, we conclude that counsel has substantially complied with the technical requirements set forth above.[1] Once "counsel has met these obligations, 'it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Commonwealth v. Flowers*, 113 A.3d 1246, 1248 (Pa. Super. 2015) (quoting *Santiago*, 978 A.2d at 354 n.5).

In his *Anders* brief, counsel presents one issue that could arguably support an appeal: "Was the evidence sufficient to convict Appellant of [REAP]?" *Anders* Brief at 3.

---

[1] Appellant has not responded to counsel's petition to withdraw.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

**Commonwealth v. Harden**, 103 A.3d 107, 111 (Pa. Super. 2014) (citation omitted).

With regard to REAP, the Crimes Code provides that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

- 4 -

> We have held that a person is guilty of [REAP] when it is shown that the person (1) possessed "a *mens rea* recklessness," (2) committed a wrongful deed or guilty act ("*actus reus*"), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person. The element of "*mens rea* recklessness" has been defined as "a conscious disregard of a known risk of death or great bodily harm to another person." "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." We have further held that Section 2705 "was directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have" had. Finally, the perpetrator must create an actual condition of danger, not merely an apprehension of danger.

***Commonwealth v. Emler***, 903 A.2d 1273, 1278 (Pa. Super. 2006) (citations and bolding omitted).

In the criminal information, the Commonwealth charged Appellant with REAP on the basis that he "recklessly engaged in conduct which placed, or may have placed, [A.F.], age 15 months, in danger of death or serious bodily injury by engaging in conduct that caused the stroller holding the victim to fall over, resulting in the said victim striking her head and face on the ground …." Criminal Information, 8/25/2014.

Mother testified at Appellant's trial. She explained that on May 1, 2014, after leaving a medical appointment for A.F., she was walking in a nearby dollar store parking lot when Appellant sneaked up behind her, grabbed her by the waist, and pulled her down. N.T., 2/5/2015, at 26-28.

Mother explained that she was holding onto A.F.'s stroller,[2] so both Mother and A.F. "went back" and that Appellant pushed her down "really hard." *Id.* at 28-29. Mother testified that, when she went down, Grandmother was on top of her and A.F. and that both Appellant and Grandmother were hitting her and A.F. *Id.* at 29. Mother also testified that she was holding onto A.F. the whole time they were down but A.F. "must have went [*sic*] onto the sidewalk," which was made out of cement. *Id.* at 29. Mother explained that Father also appeared during the incident and "was pulling at [A.F.]." *Id.* at 30. Mother testified that the police eventually separated everyone and, as a result of the incident, A.F. "had a big black and blue on her cheek" and the stroller was bent. *Id.* at 30-32.

Pennsylvania State Trooper Michael V. Ryan also testified at trial. Trooper Ryan explained that, on the day of the incident, he was driving southbound on Route 61 in Pottsville, heading in for duty, when he witnessed Mother[3] pushing a stroller with a young child in it and Appellant "sneaking up behind [Mother], grabbing [Mother] by the waist, and pulling her backwards." *Id.* at 52-53. Trooper Ryan explained that Grandmother then came from the front and grabbed Mother around the chest and pulled

---

[2] Mother described the stroller as a "summer stroller." N.T., 2/5/2015, at 29. By way of further explanation, Father confirmed that the stroller was of the type that had "handles that almost look like canes" and "a cloth pouch for the child to sit in." *Id.* at 138.

[3] Trooper Ryan refers to Mother as "the victim" throughout his testimony.

- 6 -

her down. *Id.* at 54. Trooper Ryan stated that "they went down to the ground, the stroller tips to the right (indicating); and then [Appellant] is digging in, like the arms are going down. What he was doing, I couldn't see, but was going down … towards the baby and towards [Mother]." *Id.* Trooper Ryan further explained that he could not tell whether Appellant's movements were "punches or grabbing for the child." *Id.* Trooper Ryan testified that he pulled into the parking lot, at which point Father became involved and began "digging at the child." *Id.* at 55. Trooper Ryan stated that he explained to the individuals that he was a trooper with the state police and that he took control of A.F. *Id.* at 56. At that time, Trooper Ryan saw a bruise on A.F.'s right cheek. *Id.*

The Commonwealth also presented the testimony of Patrolman Paul Olson of the Pottsville Bureau of Police. Patrolman Olson explained that he was summoned to the scene and, upon arriving, aided in separating the parties involved. *Id.* at 84-85. He stated that he spoke with the individuals involved in the altercation and Trooper Ryan, and he observed that A.F. had some bruising on her cheek area and a few minor scratches. *Id.* at 88-89. When asked what the reckless behavior was that Appellant engaged in to cause a danger of death to the child, Patrolman Olson stated that "an infant has a very soft skull. … If the child would hit the ground violently enough, that could cause serious bodily injury to the child's head and/or brain." *Id.* at 99.

The above evidence, viewed in the light most favorable to the Commonwealth, is sufficient to support Appellant's REAP conviction as to A.F. That is, in grabbing Mother and pulling her to the ground while she was pushing her young child in a stroller, Appellant recklessly engaged in conduct which placed or may have placed that child in danger of death or serious bodily injury. Although Father, Grandmother, and Appellant all testified that the altercation began between Mother and Grandmother and that Appellant's physical involvement was limited to an initial (and unsuccessful) attempt to remove A.F. from her stroller and the situation,[4] it is clear that the jury did not credit this testimony. *See Harden*, 103 A.3d at 111 ("[T]he [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.").

Based on the foregoing, we conclude that Appellant's issue challenging the sufficiency of the evidence is frivolous. Moreover, we have conducted "a full examination of the proceedings" and conclude that "the appeal is in fact wholly frivolous." *Flowers*, 113 A.3d at 1248. Thus, we affirm the judgment of sentence and grant counsel's petition to withdraw.

---

[4] *See* N.T., 2/5/2015, at 135-44, 160-65, 191-201.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2015