J-A01040-20

2020 PA Super 73

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PRISCILLA BROCKINGTON | : | |
| | : | |
| Appellant | : | No. 2349 EDA 2018 |

Appeal from the Order Entered August 3, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0006724-2018

BEFORE: NICHOLS, J., MURRAY, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                                    **FILED MARCH 27, 2020**

Appellant, Priscilla Brockington, appeals from the order of the Court of Common Pleas of Philadelphia County denying Appellant's petition for writ of *certiorari* from her May 16, 2018 conviction in the Municipal Court of Philadelphia County, General Division of possession of the instrument of a crime (PIC) and recklessly endangering another person (REAP).[1] We affirm.

At approximately 5:40 am on March 13, 2018, Appellant heard noises outside the front of her house located on the 5300 block of North Camac Street in Philadelphia. Appellant then exited her house and fired a single shot skywards with a handgun legally owned by her son, who resided at her house but was not present on the date at issue. John Sumpter, who lived on the same block as Appellant but across the street, heard the gunshot just after

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 907(a) and 2705, respectively.

returning to his house from walking his dog. Mr. Sumpter then walked out his front door and observed Appellant standing on a landing on her front steps with her hand raised in the air. Mr. Sumpter watched Appellant lower her arm and reenter her house. Mr. Sumpter notified the police that a shot had been fired from Appellant's house.

Officer Thomas Dempsey of the Philadelphia Police Department responded to Mr. Sumpter's call at approximately 6:50 am. Upon his approach of Appellant's house, Officer Dempsey observed a spent shell casing near Appellant's front door. Appellant admitted to him that she had "fired a warning shot" and informed him that "people were messing with her next door." N.T., 5/16/18, at 12-13. Officer Dempsey did not speak with Appellant's next door neighbors but did interview Mr. Sumpter.

Appellant was arrested and charged with one count each of PIC and REAP. Appellant proceeded to a non-jury trial in Municipal Court on May 16, 2018. Following trial, the Municipal Court found Appellant guilty of one count each of PIC and REAP and sentenced her to concurrent terms of 12 months of probation on each charge. Appellant filed a timely petition for writ of *certiorari* in the Court of Common Pleas. After hearing oral argument, the Court of Common Pleas entered an order on August 3, 2018 denying the petition. Appellant then filed a timely notice of appeal.[2]

---

[2] Appellant filed her concise statement of errors complained of on appeal on August 28, 2018. The trial court filed its Rule 1925(a) opinion on April 29, 2019.

On appeal, Appellant raises the following issues:

1. Was not the evidence insufficient as a matter of law to convict Appellant of possessing instruments of crime, where the Commonwealth failed to disprove self-defense beyond a reasonable doubt and, therefore, using a legally owned firearm to defend one's person and property from intruders does not show intent to employ it criminally?

2. Was not the evidence insufficient as a matter of law to convict Appellant of recklessly endangering another person and possessing instruments of crime, where no identified person was actually placed in danger by Appellant's discharge of a weapon into the air?

Appellant's Brief at 3 (lower court disposition omitted).

Appellant first argues that the evidence was insufficient to support her PIC conviction because the Commonwealth failed to disprove her claim of self-defense based on her perceived threat from her neighbors.

When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Hill*, 210 A.3d 1104, 1112 (Pa. Super. 2019) (citations, quotation marks, and brackets omitted).

To convict an individual of PIC, "the Commonwealth has the burden of proving two elements: (1) possession of an object that is an instrument of

- 3 -

crime and (2) intent to use the object for a criminal purpose." *In the Interest of A.V.*, 48 A.3d 1251, 1253 (Pa. Super. 2012); *see also* 18 Pa.C.S. § 907(a). "[T]he actor's criminal purpose . . . provides the touchstone of his liability" for the PIC offense, and "[s]uch purpose may be inferred from the circumstances surrounding the possession." *Commonwealth v. Andrews*, 768 A.2d 309, 317-18 (Pa. 2001) (citation omitted). Criminal intent to support a PIC conviction cannot be inferred where the defendant used the instrument solely for self-defense. *In the Interest of A.C.*, 763 A.2d 889, 891 (Pa. Super. 2000); *see also Commonwealth v. Watson*, 431 A.2d 949, 953 (Pa. 1981) (reversing conviction for possession of a concealed weapon, 18 Pa.C.S. § 907(b), where the Court determined that the defendant committed the underlying killing in self-defense).

Where a defendant employs deadly force, as Appellant did here,[3] a claim of self-defense is applicable where the defendant (i) reasonably believed that

_____

[3] Appellant argues that her act of firing a firearm into the air within a dense urban environment did not constitute deadly force. Deadly force is defined as "[f]orce which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." 18 Pa.C.S. § 501. As we conclude that there was sufficient evidence that Appellant created an actual danger of death or serious bodily injury to another for the purposes of the REAP statute, *see infra*, we likewise conclude that her actions were readily capable of causing death or serious bodily injury and therefore constituted "deadly force." In any event, even if Appellant's firing of a warning shot did not constitute deadly force, her claim of self-defense fails because she did not possess a reasonable belief that firing a warning shot was proportional and "immediately necessary for the purpose of protecting [her]self against the use of unlawful force by [an]other person." 18 Pa.C.S. § 505(a), (b)(3); *see also* 18 Pa.C.S. § 501.

force was necessary to protect herself against death, serious bodily injury, kidnapping, or sexual intercourse compelled by force or threat; (ii) was free from fault in provoking the use of force against her; and (iii) the actor did not violate a duty to retreat. 18 Pa.C.S. § 505(b)(2); **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017). Under the castle doctrine, the defendant is presumed to have a reasonable belief that deadly force was necessary to protect herself when both of the following conditions are met:

> (i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.

> (ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

18 Pa.C.S. § 505(b)(2.1); **Commonwealth v. Childs**, 142 A.3d 823, 830-31 (Pa. 2016).

A defendant does not have the burden to prove a claim of self-defense. **Miller**, 172 A.3d at 640. Rather, once the defendant introduces some evidence to justify a finding of self-defense, the issue is properly before the fact-finder and the Commonwealth has the burden of disproving the defense beyond a reasonable doubt. **Id.**

Appellant argues that her testimony regarding her neighbors knocking or scratching on her front door was sufficient to raise the self-defense claim. Appellant contends that she had no duty to retreat because she was in her

own home when she heard the noises outside and the claim of self-defense would apply even if she was mistaken in her belief that individuals were trying to enter her home. As she raised the defense, Appellant argues that the Commonwealth bore the burden of disproving self-defense beyond a reasonable doubt yet failed to present any evidence to prove that Appellant's actions in defending herself were unreasonable.

At trial, Appellant testified that, several months before the events at issue, she had heard someone "scratching" on the screen door of her cellar. N.T, 5/16/18, at 22. She was not sure who was scratching, but thought it might have been "Sharon's son." *Id.* at 21-22. When she approached her neighbors about the scratching, they denied knowledge and suggested that it was a cat, raccoon, or squirrel. *Id.* at 22. Appellant also stated that someone had damaged the front of her house, resulting in "a split in the front" of the house, a dented pole, and damaged concrete. *Id.* at 22, 26-27. On March 13, 2018, Appellant stated that when she woke up at 4:00 or 5:00 am, she "could hear them" outside, but she "couldn't see them." *Id.* at 22, 25. After she heard noises, Appellant testified

> I said, I hear you out there. I said, I know you're out there. I hear you but nobody answers. So, I went on the front porch and shoot [sic].
>
> . . . [After shooting the firearm,] I came back in and I thought it was a bunch of young kids going to run out. I looked out the window, and I just stood there looking out the window, put the gun down. I was looking out the window waiting for them to come out but it was the cops.

*Id.* at 23.

Appellant's testimony did not show that she knew or had reason to believe that an individual had unlawfully entered or was in the process of unlawfully entering her dwelling when she shot the firearm. 18 Pa.C.S. § 505(b)(2.1). Furthermore, Appellant did not testify that her actions were based upon the belief that she needed to protect herself against death, serious bodily injury, kidnapping, or sexual intercourse compelled by force or threat. 18 Pa.C.S. § 505(b)(2). Rather, her testimony was confined to her statement that she heard unknown individuals making noises outside. While Appellant had testified that she had previously heard an individual scratching at her cellar door, there was no testimony that the noises Appellant heard on March 13, 2018 were consistent with the noises of an individual attempting to unlawfully enter her dwelling. Likewise, Appellant's statements that the front of her home had been damaged at an earlier date would not justify her use of force on the date in question. *See* 18 Pa.C.S. § 507(c)(4) (outlining the circumstances when the use of deadly force is permissible to protect property). Appellant thus did not present sufficient evidence to invoke self-defense as a justification for her actions. *See Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (evidence presented in favor of a claim of self-defense must be sufficient to meet the statutory self-defense standard in order to shift the burden to the Commonwealth to disprove the self-defense claim); *Commonwealth v. Cannavo*, 199 A.3d 1282, 1288 (Pa. Super. 2018) (same). Because the claim of self-defense was not validly raised, the

Commonwealth was not required to disprove the defense beyond a reasonable doubt. Accordingly, Appellant's first issue merits no relief.

In her second issue, Appellant argues that the evidence was insufficient to prove that she committed REAP by firing a single shot up in the air when no identified person was actually placed in danger by Appellant's discharge of the weapon.

An individual commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. We have held that an individual is guilty of REAP if she "(1) possessed 'a *mens rea* [of] recklessness,' (2) committed a wrongful deed or guilty act ('*actus reus*'), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person." **Commonwealth v. Emler**, 903 A.2d 1273, 1278 (Pa. Super. 2006) (citation omitted). The reckless mental state required for a REAP conviction has been defined as "a conscious disregard of a known risk of death or great bodily harm to another person." **Id.** (citation omitted). REAP "requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." **Commonwealth v. Shaw**, 203 A.3d 281, 284 (Pa. Super. 2019).

The discharge of a firearm can be capable of causing death or serious bodily injury; however, "the mere act of discharging a firearm does not on its own constitute recklessly endangering another person." **Id.** This Court has addressed several cases in which an individual challenged their conviction for

a REAP offense based on the firing of a gun without aiming at another individual. In **Commonwealth v. Smith**, 447 A.2d 282 (Pa. Super. 1982), this Court reversed a REAP conviction where the sole witness to the events testified that he had seen the defendant from a distance of 25 yards, kneeling with a rifle in his hand, but the witness had looked away a few seconds prior to the shot being fired and thus he could not testify as to the direction in which the shot was fired. *Id.* at 283-84. In **Commonwealth v. Kamenar**, 516 A.2d 770 (Pa. Super. 1986), we held that the discharge of a handgun out of the rear window of a home into a wooded hillside did not place anyone in danger of death or serious bodily injury because the shot was not fired towards a location "where any dwelling, other structure, or any other person was known to be located." *Id.* at 771-72.

By contrast, in **Commonwealth v. Hartzell**, 988 A.2d 141 (Pa. Super. 2009), we held that the defendant created a substantial risk of death or serious bodily injury where he fired a semi-automatic rifle into a shallow creek with the impact occurring approximately 25 to 30 feet from two men because it was "hardly inconceivable that a bullet fired into the stream nearby could have struck a rock or other object and deflected up and hit one of the two men." *Id.* at 144. In **Shaw**, the defendant fired a handgun into the ceiling of his porch while another individual was attempting to hide behind a vehicle approximately 15 to 20 feet away. 203 A.3d at 285-86. We upheld the REAP conviction in that case because there was evidence that a person was in actual

danger of being seriously injured or killed by the gunshot based upon the possible ricochet of the bullet off of the porch ceiling. *Id.* at 286.

In the instant matter, we conclude that the Commonwealth presented sufficient evidence to prove that Appellant committed a REAP offense. The undisputed evidence presented at trial established that Appellant exited her home and fired a single warning shot up into the air. Upon hearing the shot, Mr. Sumpter, Appellant's neighbor who had just stepped inside his house after walking his dog, immediately walked back outside to investigate what was happening.[4] Within the Philadelphia neighborhood where Appellant resided, it is "hardly inconceivable" that the falling bullet fired from Appellant's gun would have struck Mr. Sumpter, anyone else who had ventured outside to determine the source of the noise, or indeed any other nearby Philadelphian who happened to be outside at that time. *Hartzell*, 988 A.2d at 144; *see also People v. Collins*, 824 N.E.2d 262, 268 (Ill. 2005) ("The inherent danger caused by the reckless discharge of a firearm into the air, and the obvious ricochet effect that may occur when bullets fall to the ground, are matters of

---

[4] We note that the REAP statute does not require that the Commonwealth identify a specific individual who was in substantial danger. *See Commonwealth v. Lawton*, 414 A.2d 658, 662 (Pa. Super. 1979) (the REAP offense "does not require any particular person to be actually placed in danger, but deals with potential risks, as well as cases where a specific person actually is within the zone of danger" (citation omitted)). Nevertheless, the Municipal Court, as fact-finder, could have inferred from Mr. Sumpter's testimony that he was in substantial danger of being seriously injured by the falling bullet. *See* N.T., 5/16/18, at 5-6, 9 (testifying that he had taken a "few steps" into his house, "heard a gunshot," then walked directly back out the door).

common sense."). Therefore, the evidence showed that Appellant created "an actual present ability to inflict harm to another." **Shaw**, 203 A.3d at 284. Moreover, though Appellant does not explicitly challenge whether the Commonwealth met its burden of showing that she acted with recklessness, we find her firing a "warning shot" into the air merely upon hearing noises outside and without any reason to believe that anyone was actually attempting to illegally enter her home was clearly sufficient for the fact-finder to find that she acted with a conscious disregard of a known risk of death or great bodily harm to another. **Emler**, 903 A.2d at 1278.

Both **Kamenar** and **Smith** are distinguishable. In **Kamenar**, the evidence was unequivocal that the shot was directed towards a wooded hillside, an area where there were no houses and no known individual was present. Here, the shot was not fired towards any individual, but created a danger when the bullet would eventually return to earth. Similarly, in **Smith**, there was no evidence at all regarding which direction the shot was fired or where it made impact such that it was impossible to determine whether the shot had placed the witness in danger. While we noted in **Smith** that it was "[j]ust as plausible . . . that the rifle was fired into the air" as in the direction of another, 447 A.2d at 284, that case occurred in a rural section of Juniata County where the defendant's house was separated from his nearest neighbor by a one-hundred-yard field. **Id.** at 283. Rather, as in **Shaw**, which also occurred in the City of Philadelphia, we recognize that the potential danger

- 11 -

caused by an errant shot fired is far greater in an "urban residential area."

203 A.3d at 286.[5]

For the foregoing reasons, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2020

---

[5] We note that Philadelphia is a city of the first class (indeed the only such city in the Commonwealth), and is therefore a densely populated urban area. **See** 53 P.S. § 101 (defining a city of the first class as containing a population of greater than one million individuals). The holding in this decision would not necessarily control in a case presenting the same set of factual circumstances but which occurred in a county of the fourth to eighth class.