J. A19011/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :    IN THE SUPERIOR COURT OF
                              :            PENNSYLVANIA
            v.             :
                              :
PAUL BURKE,              :         No. 1636 EDA 2015
                              :
           Appellant    :

Appeal from the Judgment of Sentence, February 20, 2015,
in the Court of Common Pleas of Pike County
Criminal Division at No. CP-52-CR-0000264-2014

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED OCTOBER 12, 2016**

Paul Burke appeals from the February 20, 2015 judgment of sentence entered in the Court of Common Pleas of Pike County after a jury convicted him of aggravated assault, terroristic threats, simple assault, recklessly endangering another person, and harassment.[1]  The trial court imposed an aggregate sentence of 8½ to 17 years' imprisonment.  We affirm.

The record reflects that in the early morning hours of May 5, 2014, appellant's wife, the victim, got out of bed, took her dog out, and proceeded to make coffee when appellant began calling for her.  (Notes of testimony, 11/12/14 at 37.)  When the victim went to the bedroom, appellant

---

* Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 2702(a)(1), 2706(a)(1), 2701(a)(2), 2705, and 2709(a)(1), respectively.

complained that "[e]verybody hates him." (***Id.***) When the victim tried to comfort him, he reached for a muscle relaxant, and the victim called him a "baby" for doing so. (***Id.*** at 38.) Appellant angrily responded, "[H]ow dare you say that to me," and threw the pill bottle at the victim. He then told the victim that he wanted to end his life because no one likes him and that "everybody can go on with their happy old life" without him. (***Id.*** at 39.) The victim testified that at this point, she became somewhat aggravated and told appellant that she "really [doesn't] have a life with [appellant.]" (***Id.***)

Appellant then "flew off the bed," "flipped two heaters," and "with both fists started pounding [the victim] in every direction." (***Id.*** at 39-40.) Appellant began the assault by punching the victim in the face with closed fists. The victim was unable to count how many times appellant punched her in the face with closed fists, but estimated "ten whatever." (***Id.*** at 40.) At that point, the victim ripped appellant's shirt "by accident" when she attempted to get away from him. (***Id.*** at 41.) The victim testified that this upset appellant because he said it was his "best New York [] shirt." (***Id.***) Appellant then "head-butted" the victim, ripped open both shirts that she was wearing, and choked her. (***Id.*** at 41, 44.) The victim then felt warm blood coming down into her bra. (***Id.*** at 41.) The victim testified that during this incident, she was on the floor in the fetal position attempting to block appellant from striking her, at which time appellant repeatedly struck the right side of her torso, down to her right kidney. (***Id.*** at 43.)

At this point, appellant got up, left the bedroom, and then returned with a 12-inch chef's knife. (*Id.* at 41, 52.) As the victim was on the floor, appellant stood over her, raised the knife high above her, and stated that he was going to kill the victim, their children, and his parents. (*Id.* at 42.) Appellant then lowered the knife to within 3 inches of the victim's heart. (*Id.* at 53.) The victim then told appellant to "just go." (*Id.* at 42.) He then put the knife down and retreated. (*Id.*) The victim managed to leave the residence and drive to the police station. (*Id.* at 45.) Police called an ambulance, which transported the victim to a hospital. (*Id.* at 62, 96.) The victim suffered a fractured nose and multiple abrasions, lacerations, and bruises to her face, neck, and torso. (*Id.* at 48-52.)

The record further reflects that after imposition of sentence, appellant filed a timely post-sentence motion and a timely supplemental post-sentence motion. Following a hearing, the trial court denied appellant's post-sentence motions. This timely appeal followed.

Appellant raises the following issues for our review:

> 1. Did the trial court commit reversible error by refusing to give a requested instruction on self-defense where the evidence presented by [appellant] warranted the instruction?
>
> 2. Did the sentencing court err by applying the deadly weapon enhancement to [appellant's] conviction for aggravated assault where he did not use a deadly weapon during the alleged assault?

> 3. Was the evidence insufficient to support [appellant's] aggravated assault conviction where he did not cause, or attempt to cause, serious bodily injury?

Appellant's brief at 5.

Appellant first challenges the trial court's refusal to instruct the jury on self-defense. "In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa.Super. 2014) (*en banc*), *appeal denied*, 104 A.3d 1 (Pa. 2014) (citations omitted). "It has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *Id.* (citations omitted).

With respect to the issue of self-defense, this court has previously noted that:

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting herself against the use of unlawful force by the other person. *See* 18 Pa.C.S.[A.] § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact-finder.

***Commonwealth v. Emler***, 903 A.2d 1273, 1279 (Pa.Super. 2006) (citation omitted; brackets in original omitted).

Here, the record reflects that appellant took the stand in his own defense. Appellant testified that while he was in bed that morning, and for reasons unknown to him, the victim grabbed and ripped his shirt while simultaneously calling him an "S.O.B." (Notes of testimony, 11/13/14 at 23-25.) Because appellant was "mad that she grabbed [his] shirt," appellant grabbed the victim's shirt and ripped it intentionally. (***Id.*** at 25-26.) At that point, according to appellant, the victim fell backwards off the bed while appellant was "attached to her," and the two "collided on the floor." (***Id.*** at 30.) Appellant claimed that during this collision, a fan fell over and hit the victim in the face and "put a mark on her cheek." (***Id.*** at 35.) Appellant denied striking the victim's face and again claimed that the victim's facial injuries were caused by the falling fan. (***Id.*** at 36.)

Appellant further explained that a zipper on the victim's shirt caused the injuries to the victim's neck. (***Id.*** at 43-44.) Appellant denied choking the victim. (***Id.*** at 51.) He also denied striking her 20 to 30 times with closed fists. (***Id.***) Appellant further denied holding a chef's knife over the victim and threatening to kill her and other family members. (***Id.*** at 51-52.) Appellant only admitted to grabbing and ripping the victim's shirt. (***Id.*** at 52.)

Appellant further testified that the lumps on the victim's head were caused when the fan and "other items" fell. (***Id.*** at 71.) He stated that the bruises on the victim's torso were "probably" caused when he and the victim "fell on the shoes," and that the bruise on the victim's lower back was caused "when she fell off the bed onto a pile of shoes and tapes." (***Id.*** at 73.)

The record fully supports the conclusion that there was no evidence of self-defense presented at trial. Additionally, the record clearly demonstrates that appellant's defense was that he did not cause the victim's injuries; rather, his defense was that the victim's injuries were caused by falling bodies, a falling fan, and other falling items. Because the legal principles of self-defense had no application to the facts presented at trial, the trial court properly refused to instruct the jury on self-defense.

Appellant next complains that the trial court abused its discretion when it applied the deadly weapon enhancement to appellant's aggravated assault conviction. Appellant alternatively complains that the trial court failed to provide sufficient reasons to justify appellant's sentence on his aggravated assault conviction, which was in the aggravated range.

Appellant challenges the discretionary aspects of his sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that

the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 169-170 (Pa.Super. 2010)

(citation omitted; brackets in original).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted; brackets in original).

Here, the record reflects that appellant filed a timely notice of appeal, properly preserved his sentencing issues in a timely petition for reconsideration of his sentence, and included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we must now determine whether appellant raises a substantial question.

We determine whether an appellant raises a substantial question on a case-by-case basis. *Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa.Super. 2015) (citation omitted). "A substantial question exists only when an appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id.* at 340 (citation omitted).

Appellant's issues raise substantial questions. *See Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa.Super. 2010) ("application of the deadly weapon enhancement presents a substantial question"); *see also Commonwealth v. Booze*, 953 A.2d 1263, 1278 (Pa.Super. 2008) (an

allegation that the court failed to state adequate reasons on the record for imposing an aggravated-range sentence raises a substantial question).

Appellant first complains that the trial court erred when it applied the deadly weapon enhancement when "[n]o reasonable reading of the facts and the record in this case could support a finding that [appellant] used a deadly weapon when he allegedly committed the aggravated assault on his wife."[2] (Appellant's brief at 18.)

A court shall consider the deadly weapon enhancement "[w]hen the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense . . . ." 204 Pa.Code § 303.10(a)(1). The deadly weapon enhancement defines a deadly weapon as "[a]ny device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the offender intended to use the weapon to threaten or injure another individual." *Id.* at § 303.10(a)(1)(iii).

---

[2] In reviewing the record, we note that in his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, appellant contended that the deadly weapon enhancement could not be applied because the jury did not return a finding that appellant used a deadly weapon. (Concise statement of matters complained of on appeal, 6/23/15; Docket #43.) Although appellant abandoned this argument in his brief, we note that sentencing challenges involving sentence enhancements do not implicate *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013), which requires that any fact that increases a mandatory minimum sentence must be found by a jury beyond a reasonable doubt. *See Commonwealth v. Ali*, 112 A.3d 1210 (Pa.Super. 2015).

Here, the trial court sentenced appellant on the low end of the aggravated range with respect to appellant's aggravated assault and terroristic threats convictions. The record reflects that in so doing, the trial court considered, among other things, the presentence investigation report, appellant's significant criminal record, appellant's attempt to shift blame, and appellant's lack of remorse. (*See* notes of testimony, 2/20/15 at 28-30; *see also* trial court opinion, 7/30/15). The record also establishes that during the course of appellant's assault of the victim, he made terroristic threats while he held a 12-inch chef's knife over her head, threatened to kill her, and then placed the knife 3 inches from her heart. (*See* notes of testimony 11/12/14 at 41-42, 52-53.) Therefore, appellant used a deadly weapon during the course of the assault incident.[3] We, therefore, find no abuse of discretion.

Appellant next claims that the trial court failed to state adequate reasons on the record for imposing an aggravated-range sentence. The record belies appellant's contention.

The record reflects that the victim testified at the sentencing hearing, as did appellant and two witnesses who testified on appellant's behalf. Prior to imposing sentence, the trial court stated that it had the benefit of a pre-sentence investigation report and noted that it had also presided over

---

[3] While at sentencing the Commonwealth appears to have separated the deadly weapon enhancement from the aggravated assault charge, it agrees with the trial court's application of the enhancement in this appeal.

appellant's trial. (Notes of testimony, 2/20/15 at 28.) The trial court further stated that it reviewed and considered appellant's pre-sentence memorandum, letters offered on his behalf, and the victim's testimony at the sentencing hearing. *Id.* The trial court then stated:

> THE COURT: . . . . I've heard a lot of statements and testimony today about matters from the past including [appellant's] marriage with the victim, some of which maybe [sic] true, some of which may not be true, but what the Court's heard little about today is what actually happened on the day in question which was determined by the jury and those convictions stand as the determination of facts in this case as the Court instructed the jury.
>
> The best the defense has to offer that I can hear today is that [appellant] has indicated to the Court I think on several occasions or at least attributed the words "What I can recall" and certainly the Court would note that there's a significant criminal record dating back to 1990 through 2005 and then leading up to the present offense. The Court finds that record to be inconsistent with what's being represented about [appellant] here today.
>
> It's hard to understand in this instance and not having been the decider of the facts in the case, it's hard for a Court to understand how someone in [appellant's] position just didn't walk away that day, but instead the victim ended up with some serious injuries, that certainly can be taken up on appeal if that's something that's chosen by [appellant], but I'm constrained by the jury's determination on that issue and the Court agrees with it.
>
> Instead of that, [appellant] made a conscious decision to engage in physical contact with the victim resulting in serious bodily injury. I'm being kind when I say I find the suggestions that the victim's injuries were somehow the result of marital problems or whatever, I think that's entirely inappropriate in

- 11 -

this matter. The victim's injuries didn't occur because of her own actions or because the parties had marital problems, the injuries occurred because [appellant] inflicted them period.

*Id.* at 28-30.

In its Rule 1925(a) opinion, the trial court aptly summarized the above, as follows:

> In this case, the Trial Court and the Sentencing Court were one in [sic] the same. As such, the Sentencing Court reaped the benefit of observing [a]ppellant's demeanor during trial, placing this Court in a position from which to assess his character. This Court had the benefit of a pre-sentence report, [a]ppellant's Presentence Memorandum, and multiple letters offered on [a]ppellant's behalf with which to determine his sentence. That this Court took the time to elaborate so during [a]ppellant's sentencing is a clear indication that we considered [a]ppellant's attempts to shift blame away from himself, his failure to accept responsibility for his actions, and his lack of remorse in sentencing [a]ppellant in the aggravated range.

Trial court opinion, 11/24/15 at 11.

The record reflects that the trial court placed ample reasons on the record for its imposition of sentence in the aggravated range. Therefore, this claim lacks merit.

Appellant finally complains that the evidence was insufficient to support his aggravated assault conviction.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable

> the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted).

Under the Crimes Code, a person may be convicted of aggravated assault, a first-degree felony, if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1); *see also Commonwealth v. McClendon*, 874 A.2d 1223, 1229 (Pa.Super. 2005). "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012) (citation omitted). The Crimes Code defines

"serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Here, the victim testified that appellant punched her in the face with closed fists numerous times, "head-butted" her, choked her, and repeatedly punched the right side of her torso, down to her right kidney. The record further reflects that as a result of this assault, the victim suffered a fractured nose and multiple abrasions, lacerations, and bruises to her face, neck, and torso. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, it was sufficient to enable the fact-finder to find beyond a reasonable doubt that appellant attempted to cause serious bodily injury to the victim and, therefore, sustain his aggravated assault conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2016

- 14 -