**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SETH R. MCHENRY | : | |
| | : | |
| Appellant | : | No. 425 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 15, 2024
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000128-2023

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: DECEMBER 30, 2024**

Seth R. McHenry appeals from the judgment of sentence entered following his convictions for strangulation, simple assault, harassment, and three counts of recklessly endangering another person ("REAP").[1] McHenry challenges the sufficiency and the weight of the evidence, the denial of his motion for a mistrial, evidentiary rulings, and discretionary aspects of his sentence. We affirm.

The Commonwealth charged McHenry with the above offenses following a domestic dispute with his live-in paramour of 15 years and the mother of his two children ("Victim"). The incident occurred from January 30, 2023 through January 31, 2023. The following evidence was presented at McHenry's jury trial.

---

[1] 18 Pa.C.S.A. §§ 2718(a)(1), 2701(a)(1), 2709(a)(1), and 2705, respectively.

Victim testified that on the night of January 30, 2023, she and McHenry had an argument. N.T. Trial I, 1/19/24, at 19.[2] [3] She attempted to leave their residence, but McHenry followed her outside to her car in the driveway, broke the driver's side mirror, pulled her to the back seat, and strangled her. *Id.* at 20. He then dragged her back into the house. *Id.* at 20-21. Victim testified that in the house, she heard McHenry deleting footage from their security cameras of the driveway. *Id.* at 21-22. She stated that McHenry confirmed that he was deleting the footage. *Id.* at 22. Victim testified that throughout the night and into the next morning, McHenry kicked her with his boots on, pushed her face into a concrete floor, and strangled her to the point of unconsciousness. *Id.* at 22-24. Victim testified that at some point, McHenry fell asleep in the basement. *Id.* at 24.

While he was asleep, Victim took her five-year-old daughter outside, and Victim's father drove up the driveway. *Id.* at 24-25. She testified that she told her father what happened, he asked her if she wanted to leave, and she

---

[2] There are two transcripts of "Portions of Jury Trial" from January 19, 2024 because select portions were ordered at different times. References to the first transcript, where Victim and McHenry testified, will be referred to as "N.T. Trial I, 1/19/24." References to the second transcript, where Victim's father, Mark Yurkiewicz, and Officer Jarrod Noss testified, will be referred to as "N.T. Trial II, 1/19/24." The sentencing hearing transcript will be referred to as "N.T. Sentencing, 2/15/24."

[3] Although the trial transcript is dated January 19, 2023, the trial took place on January 19, 2024. *See* Docket Number: CP-19-CR-0000128-2023, entry filed on 1/19/24.

replied, "Yes." *Id.* at 25. Victim then packed a bag of clothes and put her two children in her car. *Id.* at 26. Victim drove a white Jeep at the time. *Id.*

She testified that as she pulled out of the driveway, with her father following her in his car, she noticed McHenry following them in his Tracker. *Id.* at 27. While at a stop sign, she saw McHenry weaving in and out of traffic to try to get in front of her. *Id.* at 27-28. She said that there was then a car accident where "all three of us hit at some point." *Id.* at 28. Victim testified that she backed up and turned left onto a two-lane road. *Id.* She said that McHenry followed her and was passing cars to get in front of her. *Id.* He finally got in front of her and blocked the road with his vehicle. *Id.* Victim stated McHenry got out of his vehicle, got on the hood of her car, and pounded on her windshield. *Id.* at 28-30. She stated that during this time, there was oncoming traffic in the opposite lane and cars were stopped behind her. *Id.* at 69. McHenry then returned to his vehicle. *Id.* Victim said that she "didn't know where to go [or] what to do" and was "in a panic." *Id.* Victim began driving again, and McHenry again followed her. *Id.* at 31. At some point, she turned around and went back to the scene of the accident, with McHenry still following her. *Id.*

When she arrived back at the scene of the accident, she saw Officer Jarrod Noss and her father. *Id.* at 32. Victim testified that she told Officer Noss what had happened. *Id.* Officer Noss told Victim to go to the police station the following day. *Id.*

Victim testified that she did as Officer Noss instructed and went to the police station the next day, February 1, 2023. *Id.* at 33. She gave a written statement, and a female officer took photographs of her body. *Id.* The Commonwealth introduced the photographs, which depicted bruising and other injuries. *Id.* at 34-50; Ex. C-1 to C-14. Victim testified that all her injuries in the photographs were caused by McHenry during the incidents on January 30 and 31, 2023. N.T. Trial I, 1/19/24, at 50.

On cross-examination, defense counsel introduced a video of Victim outside of the home on the morning of January 31, 2023, the morning after the attack. *Id.* at 75. The video showed Victim with her daughter walking outside feeding their chickens and doing other household chores. *Id.* at 75-81. Victim testified that although McHenry had caused injuries to her, she was still able to walk around and lift things. *Id.* at 76.

Victim's father testified that when he arrived at Victim's house on January 31, 2023, he encountered Victim and her daughter walking up the driveway. N.T. Trial II, 1/19/24, at 3-4. He said that he immediately "noticed something [was] really wrong." *Id.* at 4. He noted that Victim's "skin was a different color and she looked bad." *Id.* Victim informed him that she and McHenry had been fighting. *Id.* Victim's father asked her if she wanted to leave, and she said yes. *Id.* at 4-5. He said that he stood in the driveway with Victim's daughter while Victim went into the house to retrieve some clothes and her other daughter. *Id.* at 5-6. He then followed behind Victim's car in his

own vehicle onto Shellhammer Road. *Id.* at 6. He drove a F-150 truck at the time. *Id.* at 3.

At some point, he noticed McHenry in his Tracker behind him. *Id.* at 6. McHenry passed Victim's father's vehicle and went in front of him. *Id.* at 7. Victim's father said when he came to the end of Shellhammer Road, he saw that McHenry had pulled in front of Victim and Victim was behind McHenry in a "T-bone" position. *Id.* Victim's father testified that he then drove into McHenry's vehicle because he "was trying to stop him from chasing" Victim with the children in her car. *Id.* He stated that McHenry proceeded to follow Victim, and he pulled over to the side of the road and called the police. *Id.* at 8. Victim's father testified that Victim stayed at his house that night. *Id.* at 9.

An eyewitness to the car accident, Mark Yurkiewicz, testified that on January 31, 2023, he saw a white Jeep (Victim's vehicle) hit a black Tracker (McHenry's vehicle) "and pushed him into a bank." *Id.* at 14-15. He also saw a third vehicle (Victim's father's vehicle) stopped at the stop sign near the other two vehicles. *Id.* He then saw Victim's vehicle drive away and McHenry's vehicle following her. *Id.* at 16. Yurkiewicz observed McHenry go in front of Victim and get out of his vehicle and onto the hood of her car. *Id.* at 16-17. Yurkiewicz said that when McHenry was on the hood, "he was just yelling at her to stop and stop, and she was trying to continue to go." *Id.* at 17. Yurkiewicz thought he had witnessed a hit-and-run when he saw Victim's car hit McHenry's car, so he stopped McHenry after he got off of Victim's car and said, "Hey, I saw everything" and gave him his information. *Id.*

Officer Noss testified that on January 31, 2023, he was dispatched for a call "for a motor vehicle accident and . . . a rolling domestic fight situation." *Id.* at 25. When he arrived at the scene, he encountered Victim's father, who admitted that he had struck McHenry's vehicle. *Id.* at 26, 40. A few minutes later, he observed Victim's vehicle arriving at the scene with McHenry's vehicle following her. *Id.* at 28. Officer Noss testified that Victim told him "what was going on over the weekend and th[e] particular incident with the crash." *Id.* at 29. The prosecutor asked him if what Victim told him was "[c]onsistent with her testimony here today[.]" *Id.* Defense counsel lodged an objection, and the court overruled it. *Id.* Officer Noss responded that what Victim had told him on the day of the incident was consistent with her testimony at trial. *Id.* at 29-30.

Officer Noss testified that Victim and her father came to the police station the next day. *Id.* at 33. He stated that he observed injuries on Victim's face and neck area. *Id.* at 39. When Officer Noss interviewed McHenry, McHenry explained that he followed Victim's car because "he was trying to get to his kids." *Id.* at 32.

McHenry testified on his own behalf and denied that any argument or assault took place between himself and Victim. N.T. Trial I, 1/19/24, at 95, 101-02. He stated that on January 31, 2023, he was sleeping in the basement and was awakened by his house's security system alerting him that someone was in his driveway. *Id.* at 94. He then observed Victim and the children leaving the residence. *Id.* McHenry testified that he followed Victim in his

- 6 -

Tracker because Victim had taken the children away from him in the past. *Id.* at 94, 96. He stated that after Victim's father struck his vehicle, he continued to follow Victim and sat on the hood of her vehicle yelling at her to stop. *Id.* at 97. McHenry stated that he did not hit or ram into Victim's vehicle at any time. *Id.* at 98.

On cross-examination, the Commonwealth asked McHenry, who is a professional security system installer, to explain why there was no video footage from the night of January 30, 2023 when Victim said she was beaten in the driveway. *Id.* at 104-05. Defense counsel objected claiming that McHenry did not have to prove his innocence by producing any such video. *Id.* The court overruled the objection and stated, "He's on the stand and he doesn't have to prove his innocence, . . . but it's cross[-]examination and he can ask the question." *Id.* at 105. McHenry responded that there was no footage of that night because Victim made up the incident. *Id.* He testified that there must be movement for the cameras to record and there was no movement in the driveway that night. *Id.* at 105. He also stated that Victim's car was parked in a blind spot with no camera coverage. *Id.*

At the conclusion of the trial, the jury found McHenry guilty of the above offenses. The court sentenced him to 24 to 96 months' incarceration for strangulation, one to six months' incarceration for simple assault, and one to six months' incarceration on each of the three counts of REAP. The sentences were to run consecutively, for an aggregate prison term of 28 to 120 months.

McHenry filed post-sentence motions, which were denied. This appeal followed.

McHenry raises the following issues:

1. Was the evidence presented insufficient to sustain a guilty verdict on the three (3) counts of recklessly endangering another person?

2. Alternatively, was the jury's finding of guilt on all counts so against the weight of the evidence presented as to shock one's conscience and sense of justice?

3. Did the trial court err in denying [McHenry's] motion for a mistrial?

4. Did the trial court abuse its discretion and err as a matter of law when it overruled [McHenry's] objection to the bolstering testimony of Officer Noss and permit the testimony as a prior consistent statement?

5. Did the trial court err when it overruled defense counsel's objection to the Commonwealth questioning [McHenry] about his failure to present video evidence at trial, thereby placing an improper burden on [McHenry] to prove his innocence?

6. Did the trial court abuse its discretion when it sentenced [McHenry] to an aggregate sentence of 28 to 120 months within a state correctional institution; sentencing [McHenry] at the top of the standard range and running each count consecutive to the other[?]

McHenry's Br. at 6.

McHenry first argues the evidence was insufficient to support his convictions for three counts of REAP. *Id.* at 31. He maintains that the Commonwealth failed to present evidence showing that he "possessed the required *mens rea* for REAP, or engaged in such behavior or meet the *actus rea* requirement." *Id.* at 33. He argues that the evidence showed that he

traveled the speed limit during the incident, did not ram or attempt to ram into Victim's vehicle, and did not engage "in any other intentional or reckless behaviors which created a risk of serious bodily injury or death to [Victim] or the children, or that would have caused any reasonable person to believe they were at risk for serious bodily injury or death." *Id.* at 34. McHenry points out that Victim described his behavior as only following her, and not as a car chase. *Id.* He also emphasizes that Victim did not describe his behavior as aggressive or violent, and Victim never testified that during the time they were traveling in their vehicles that she or the children were afraid. *Id.* In his view, "[f]ollowing behind someone's vehicle, traveling at the speed limit at reasonable distances, and engaging in no aggressive or threatening behavior or actions does not amount to reckless behavior sufficient to convict an individual for REAP." *Id.* at 35.

The sufficiency of the evidence is a question of law. Therefore, "[o]ur standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Mikitiuk***, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a

reasonable doubt, the sufficiency of the evidence claim must fail." ***Id.*** (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. ***Commonwealth v. Patterson***, 180 A.3d 1217, 1229 (Pa.Super. 2018). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence[,] is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa.Super. 2017). In conducting the sufficiency analysis, "we may not substitute our judgment for that of the factfinder." ***Commonwealth v. Griffith***, 305 A.3d 573, 576 (Pa.Super. 2023), *appeal denied*, 319 A.3d 503 (Pa. 2024).

A person commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. To prove REAP, the Commonwealth must show that the defendant "(1) possessed a *mens rea* [of] recklessness, (2) committed a wrongful deed or guilty act ('*actus reus*'), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person." ***Commonwealth v. Emler***, 903 A.2d 1273, 1278 (Pa.Super. 2006) (cleaned up).

"Recklessness" is defined as "a conscious disregard of a known risk of death" or serious bodily injury to another person. ***Id.*** (citation omitted). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. REAP "requires the creation of danger, so the

- 10 -

Commonwealth must prove the existence of an actual present ability to inflict harm to another." ***Commonwealth v. Shaw***, 203 A.3d 281, 284 (Pa.Super. 2019).

Here, the court found that the evidence was sufficient for the jury to find McHenry guilty of three counts of REAP. ***See*** Trial Court Opinion, 5/13/24, at 9. We agree that the evidence was sufficient. The evidence showed that McHenry weaved in and out of traffic while he chased Victim in his vehicle. He eventually got in front of her and stopped his vehicle at a stop sign, wherein an eyewitness saw Victim's Jeep hit McHenry's Tracker. McHenry then followed Victim as she drove away while passing cars to get in front of her. He finally got in front of her and blocked the road with his vehicle. McHenry then exited his vehicle, got on the hood of Victim's car, and pounded on her windshield. During this time, there was oncoming traffic in the opposite lane and there were cars stopped behind Victim. Victim testified that she was "in a panic" while she tried to escape McHenry with her two young children in the car. McHenry possessed the *mens rea* of recklessness when he initiated wrongful conduct that created an actual danger of death or serious bodily injury to Victim and the children. Thus, the evidence was sufficient to support his convictions of REAP.

McHenry next argues that the guilty verdicts of REAP, simple assault, and strangulation were against the weight of the evidence. He asserts that the testimony of Victim and Victim's father lacked credibility and that both witnesses were unfairly biased as to the outcome of the case. McHenry's Br.

at 38. As to the REAP convictions, McHenry argues that Victim's testimony did not support the jury's guilty verdict. *Id.* at 39. He points out that Victim did not testify that he chased her, but rather only that he followed, and that she could not remember certain details of the incident. *Id.* He also notes that there was no testimony that he rammed her, threatened her, or "engaged in any other reckless behavior that created a risk to her or the minor children." *Id.*

As to the simple assault and strangulation convictions, McHenry argues that the photographs of Victim taken by the police contradicted Victim's testimony. He maintains that, contrary to the Victim's version of events, they showed that "the bruises were in different stages of healing and could not have all occurred on the same date, and just a day or two prior to being photographed." *Id.* at 40. He asserts that the photographs also did not support Victim's claim that McHenry kicked her in her hips wearing boots, stepped on her back, or pushed her face into the ground. *Id.* McHenry concludes that "[i]n consideration of the voluminous contradictory testimony and demonstrative evidence, and the lack of ability of [Victim] to testify in more specificity or detail, the jury's guilty verdicts are not supported by the weight of the evidence presented on the record, and the finding of guilt shocks the conscience and sense of justice." *Id.* at 41.

"We review a trial court's order denying a weight challenge for an abuse of discretion." *Commonwealth v. Fallon*, 275 A.3d 1099, 1107 (Pa.Super. 2022). Because the trial court heard the testimony firsthand, we must "give

- 12 -

the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id.* (citation omitted). A weight claim requires the defendant to first convince the trial court that "the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa.Super. 2017) (internal quotation marks and citation omitted). This Court then reviews the trial court's decision in this regard for an abuse of discretion. *Id.* Further, "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citation omitted). "When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited." *Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa.Super. 2012) (citation omitted).

Here, we cannot say that the trial court abused its discretion in finding the verdicts did not shock the conscience. The jury was free to believe all, part, or none of the evidence presented in judging the credibility of the witnesses and evidently credited the Commonwealth's witnesses. *Champney,* 832 A.2d at 408. No relief is due.

McHenry next argues the trial court erred in denying his motion for a mistrial. During Victim's testimony at trial, she stated that after the driving incident, Officer Noss advised her to get a Protection from Abuse ("PFA") order

against McHenry. N.T. Trial I, 1/19/24, at 32. The mention of a PFA came up again later in her testimony when the Commonwealth asked her, "So you mentioned that you did pursue getting a [PFA] against Mr. McHenry, is that correct?" She responded, "Yes." *Id.* at 50. The Commonwealth then asked, "Is that Order still in effect?" At that point, defense counsel lodged an objection. *Id.* During a sidebar discussion, defense counsel moved for a mistrial claiming the reference to the existence of a PFA was prejudicial. *Id.* at 51. The Commonwealth countered that evidence of a PFA went to Victim's credibility as "her follow-thru that she continues to believe that she's in danger from Mr. McHenry." *Id.* The court sustained the objection, struck the question and response from the record, denied the motion for mistrial, and gave the following cautionary instruction to the jury:

> You have heard that there was some thought of a PFA, maybe some pursuit of it. Defense, you heard, objects to that. I'm going to sustain that objection and strike that reference, any reference to PFA from the record, mainly because it really doesn't matter what happened in PFA proceedings, if they existed.
>
> What matters is your judgement in this case what happened independent of that. So, really, I'm telling you that the PFA references are irrelevant. You get to make an independent decision what happened in this case from the testimony you hear in this case. So please purge that from your memory and don't consider it.

*Id.* at 51-53.

McHenry argues that the trial court should have granted his motion for a mistrial. McHenry's Br. at 43. In his view, "the Commonwealth intentionally elicited the testimony regarding the PFA for the purpose of prejudicing [him]

and removing his right to a fair trial before an impartial jury." *Id.* at 44. He points out that the Commonwealth elicited testimony concerning the PFA at two separate times. *Id.* at 44-45. McHenry concludes that "[t]he Commonwealth's actions in eliciting the information multiple times, and its failure to adequately notify the defense of its intention to do so prior to trial, clearly shows that it was not by mistake or happenstance, but rather an intentional strategy to present the inadmissible and improper evidence to the jury[.]" *Id.* at 45.

We review the trial court's grant or denial of a motion for a mistrial for an abuse of discretion. *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011). An abuse of discretion is where the court misapplies or overrides the law, exercises its judgment in a manifestly unreasonably way, or if its decision is "the result of partiality, prejudice, bias or ill-will[.]" *Commonwealth v. Wright*, 961 A.2d 119, 142 (Pa. 2008) (citation omitted). A mistrial is required "only when an incident is of such a nature that its unavoidable effect is to deprive the [defendant] of a fair and impartial trial." *Commonwealth v. Bennett*, 225 A.3d 883, 890 (Pa.Super. 2019) (citation omitted). "A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." *Chamberlain*, 30 A.3d at 422.

Here, the trial court determined that the denial of a mistrial was appropriate:

> The first disclosure of PFA proceedings against [McHenry], including the securing of a PFA Order (". . . he advised me to get a PFA on [McHenry] and I did . . .") was

> entered into the record without objection. Therefore, the jury already knew about the PFA proceedings without objection. The second reference was the subject [of] an objection. The court sustained the objection and gave a very explicit cautionary instruction, telling the jury that the PFA result was "irrelevant" and that the jury in the present case had to determine "what happened" on their own accord, without regard to the PFA proceedings.

Trial Ct. Op. at 7 (citations to record omitted).

The trial court was within its discretion in denying McHenry's motion for a mistrial. The Commonwealth did not intentionally elicit the information from the witness for the purpose of prejudicing McHenry. Rather, as the Commonwealth stated at sidebar, the purpose of the inquiry was to strengthen Victim's credibility. Moreover, the trial court gave a cautionary instruction and directed the jury not to consider the PFA in reaching its decision. We do not believe that McHenry was prejudiced such that the "unavoidable effect [was] to deprive [him] of a fair and impartial trial." **Bennett**, 225 A.3d at 890 (citation omitted).

McHenry next argues that the trial court erred when it overruled McHenry's objection to Officer Noss's testimony that the Victim's testimony was consistent with her statements at the time of the incident. McHenry maintains that the testimony constituted improper bolstering and that the court improperly admitted Officer Noss's testimony as a prior consistent statement. McHenry's Br. at 29. McHenry argues that the trial court "improperly allowed the testimony as a prior consistent statement, despite no specific statement being referenced, and no impeachment by the defense on

[Victim's] testimony as being non-credible due to improper motive or lack of memory." *Id.* at 29-30. In his view, this testimony was "nothing more than cumulative, served no other purpose than to buttress and corroborate [Victim's] trial testimony, and was presented to influence the jury's weighing of [Victim's] testimony and credibility in favor of the Commonwealth." *Id.* at 49.

Evidence of a witness's prior consistent statement is admissible for rehabilitation purposes if "the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of . . . fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose." Pa.R.E. 613(c)(1); *see also Commonwealth v. Harris*, 852 A.2d 1168, 1175 (Pa. 2004). "Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment." *Commonwealth v. Bond*, 190 A.3d 664, 668 (Pa.Super. 2018) (citation omitted). We will reverse the trial court's admission or exclusion of evidence only for a clear abuse of discretion. *Commonwealth v. Baker*, 313 A.3d 1112, 1122 (Pa.Super. 2024).

For a prior consistent statement to be admissible to rehabilitate a witness's testimony, pursuant to Rule 613(c)(1), the claim that the witness fabricated her testimony or has a faulty memory does not have to be explicit or direct. *Bond*, 190 A.3d at 668. Rather, "it may be implied, inferred, or

insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two." *Id.* (citation omitted).

Here, in finding that the testimony was admissible as a prior consistent statement, the court explained:

> Prior consistent statements would have been permitted to rehabilitate [Victim's] credibility after being heavily cross[-]examined by defense counsel during which there were multiple efforts made by defense counsel to impeach her credibility . . .
>
> [T]he entire point of the defense was to demonstrate that [Victim] was lying about the assaults. She was heavily cross[-]examined on the details and presented with videos (Ex. D-1) which the defense argued showed that the victim . . . was not limping, and was supposedly going about her business as if nothing had happened. [McHenry] testified and blanketly denied perpetrating the assaults. [McHenry] used surveillance video on cross[-]examination of [Victim] to attempt to prove that the events did not occur as described by [Victim] and to show that she was going about her day as with any other day. Officer Noss' testimony that [Victim's] testimony at trial was consistent with her prior statements was admissible.

Trial Ct. Op. at 7-8.

The court did not abuse its discretion in permitting the testimony. The testimony was offered to rebut an implied charge of fabrication or faulty memory against Victim. Moreover, even if the court erred in admitting the testimony, we find the error was at most harmless, beyond a reasonable doubt. There was strong evidence – including the testimony of a disinterested eyewitness – supporting McHenry's convictions, the record indicates McHenry received a fair trial, and this specific portion of Officer Noss' testimony was

- 18 -

cumulative of other evidence corroborating the Victim's testimony. **See Commonwealth v. Passmore**, 857 A.2d 697, 711 (Pa.Super. 2004).

McHenry next argues that the trial court erred when it overruled defense counsel's objection to the Commonwealth's questioning him about his failure to present video footage from the night of January 30, 2023, the time when Victim said she was beaten in the driveway. According to McHenry, "[t]he Commonwealth's questioning before the jury unconstitutionally shifted the burden of proof from the Commonwealth's sole burden of proving guilt onto [him] having any burden whatsoever to prove his innocence." McHenry's Br. at 50. He emphasizes that the burden of proof rested solely on the Commonwealth and, as the defendant, he was not required to present any evidence to prove his innocence. **Id.** He claims that he suffered prejudice as a result of this questioning. **Id.** at 51.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Shelton**, 170 A.3d 549, 552 (Pa.Super. 2017) (citation omitted). We will not find an abuse of discretion unless the "ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." **Id.** (citation omitted).

"Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness'[] motive for testifying." **Commonwealth v. Ballard**, 80 A.3d 380, 394 (Pa. 2013) (quoting

- 19 -

*Commonwealth v. Chmiel*, 889 A.2d 501, 527 (Pa. 2005)). "The scope of cross-examination is a matter within the discretion of the trial court" and we will not reverse absent an abuse of that discretion. *Id.* (quoting *Chmiel*, 889 A.2d at 527).

The trial court explained why it overruled the objection:

> [Victim], on direct during the Commonwealth's case in chief, testified that the [McHenry] deleted surveillance video of the time periods during which the assault occurred. It was admitted that the [McHenry's] profession is the installation and maintenance of surveillance video systems. Thereafter, in [McHenry's] case in chief, [McHenry] chose to testify. On direct, he spent significant time confirming his expertise in video surveillance.
>
> During cross[-]examination of [McHenry], the Commonwealth followed up on this theory, which began with [Victim's] testimony that [McHenry] . . . deleted the footage of the assault. The Commonwealth asked [McHenry] on cross[-]examination: "Where is the video from the night of Monday, the 30th, outside?" Defense counsel objected, asserting that [McHenry] did not have to prove his innocence. The court overruled the objection, noting for the jury that [McHenry] did not have to prove his innocence, but that it was cross[-] examination and that the question would be permitted.
>
> ***
>
> The question was proper cross[-]examination, given that destruction of the video was put at issue by the Commonwealth in [its] case in chief, and given that [McHenry] waived his 5th Amendment right and chose to testify and subject himself to cross[-]examination. At no time was a burden of proving innocence imposed upon [McHenry], and this court expressly confirmed otherwise.

Trial Ct. Op. at 10-11 (citations to record omitted).

- 20 -

The court did not abuse its discretion in overruling the objection. The issue of the potential destruction of evidence was already put into issue in the Commonwealth's case-in-chief and McHenry chose to waive his Fifth Amendment right and testify. The Commonwealth was therefore within its rights to attempt to undermine McHenry's credibility by posing the question. Further, the court emphasized to the jury that McHenry did not have to prove his innocence. Thus, the question on cross-examination was proper.

McHenry's final argument is that his sentence was manifestly excessive and the court failed to adequately consider all relevant sentencing factors. This goes to the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before reviewing the merits of McHenry's claim, we must determine whether:

> (1) the appeal [wa]s timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code.

*Commonwealth v. Green*, 204 A.3d 469, 488 (Pa.Super. 2019); Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

- 21 -

Here, McHenry timely appealed and preserved his challenge in a post-sentence motion. He has included a Rule 2119(f) statement in his brief and raises a substantial question claiming that his sentence is excessive and the court failed to consider all relevant sentencing factors. *See* McHenry's Br. at 26-27; *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa.Super. 2015) (*en banc*) ("an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question") (citation omitted). Therefore, we will address McHenry's sentencing claim on the merits.

McHenry argues that his sentence is manifestly excessive. McHenry's Br. at 26. He argues that the court failed to adequately consider all sentencing factors, and fashioned its sentence based almost entirely on the impact on Victim. *Id.* at 26, 54. He maintains that the court "gave only a perfunctory consideration to [his] individual circumstances, including his rehabilitative needs, his lack of criminal history, or any other specific information pertaining to [him] necessary in fashioning an appropriate and individualized sentence as required." *Id.* at 55. McHenry contends that the court did not review any pre-sentence investigation ("PSI") report and did not state on the record its reasons for sentencing him in the top of the standard range on each count. *Id.*

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super.

2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* (citation omitted). In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

Where the court has the benefit of a pre-sentence investigation ("PSI") report, we presume the court was aware of all appropriate sentencing factors and considerations and consider the requirement that the court place its reasoning on the record to be satisfied. *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 26 (Pa.Super. 2017). In conducting appellate review, we may not reweigh the sentencing factors and impose our own judgment in place of that of the trial court. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009).

Here, at the sentencing hearing, the court heard testimony from McHenry, McHenry's father, and Victim. N.T. Sentencing, 2/15/24, at 3-5, 9-12, 14-15. It also admitted into evidence three character letters on behalf of McHenry. *Id.* at 2. The court also had reviewed the PSI report[4] and noted that

---

[4] Despite McHenry's assertion to the contrary, the record reflects that the court had the benefit of a PSI report. *See* N.T. Sentencing, 2/15/24, at 2-3 (wherein the court asks defense counsel if there were "any additions or corrections to the PSI report?" and counsel responds, "No additions or corrections").

McHenry's prior record score was zero. ***Id.*** at 2-3, 16. Prior to imposing

sentence, the court stated:

> [T]his involved the victim trying to escape, [McHenry] chasing her while she had the kids in the car, and that's the Recklessly Endangering counts, putting the kids at risk. It was a total mess. And [McHenry] brought it on himself.
>
> I'm going to have immediate incarceration because I am concerned with the violence of this incident, and I don't want to subject the victim to any kind of retaliation . . .
>
> So considering all the factors in [204 Pa.Code §] 303.11, [42 Pa.C.S.A. §] 9721, rehabilitation opportunities, punishment, protection of the victim, seriousness of the offense, the victim's injuries, incapacitation, all those for purposes of sentencing I have considered and factor into my decision here on the sentences.

***Id.*** at 16-17.

The court did not abuse its discretion. The court took into consideration

the protection of the public, the gravity of the offense, and the rehabilitative

needs of the defendant, as required under 42 Pa.C.S.A. § 9721(b).

Additionally, because the sentencing court considered the PSI report, we

presume the court was aware of all appropriate sentencing factors and

consider the requirement that the court place its reasoning on the record to

be satisfied. ***See Johnson-Daniels***, 167 A.3d at 26. Because the court

sentenced McHenry within the standard range of the sentencing guidelines,

albeit at the high end of the range, we cannot conclude that the sentence is

on its face excessive or unreasonable. ***See Commonwealth v. Moury***, 992

A.2d 162, 171 (Pa.Super. 2010) (stating "where a sentence is within the

standard range of the guidelines, Pennsylvania law views the sentence as

appropriate under the Sentencing Code"). Moreover, the court did not err in imposing the sentences consecutively. A sentencing court "has discretion to impose sentences consecutively or concurrently[.]" **Id.** A defendant is not entitled to a "volume discount" for his crimes by having all his sentences run concurrently. **Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa.Super. 1995). Accordingly, McHenry's final claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2024